# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SANDRA L. STANLEY,

       Plaintiff,

v.

UNITED STATES ENRICHMENT
CORPORATION,

       Defendant.

Case No. 2:07-cv-656
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment (Doc. # 33) filed by Defendant, United States Enrichment Corporation, a memorandum in opposition (Doc. # 37) filed by Plaintiff, Sandra L. Stanley, and a reply memorandum (Doc. # 45) filed by Defendant. For the reasons that follow, this Court finds the motion for summary judgment well taken in part.

### I. Background

Beginning in January 2006, Plaintiff, Sandra L. Stanley, began working as a security guard for Defendant, United States Enrichment Corporation, at Defendant's Portsmouth Gaseous Diffusion Plant in Pike County, Ohio. Plaintiff was working in this capacity manning a guard shack on October 8, 2006, when Jason E. Ragland, an employee of Defendant, approached the guard shack. In deposition testimony, Plaintiff describes what allegedly transpired next:

    Q. Okay. Tell me what happened the day in question.

    A. I was on the phone with Mike Blair. . . .

And about that time I seen Jason Ragland coming on a bicycle. And I

told Mike Blair, I said, just stay on the phone with me for a minute. He said, why, what's going on. I said, well, this guy kind of gives me the creeps, and I just want him to go. And I said – you know, I told him about the day before. I said, he's just kind of weird and he says stuff, and it's different, and there is something weird about him. Just stay on the phone with me, so he did. Go on?

Q. Yes.

A. Okay. Well, I'm there and I locked the door, because my mom told me the day before, you know, maybe – lock the door. Don't let people just come in there like that. Just lock the door.

So I had the door locked, and I was turned around, and I heard him jiggling the door, and I turned around. He motioned for me to come over, like he needed something. So I walked over with the phone in my hand, and I unlocked the door. Well, he immediately – it opens to the outside. So he took it and swung it open and came in at me, and I backed up to sit down at the chair. You have to keep in mind that this is like a six-by-six guard shack. It's very small, and there is enough room for two chairs and the big thing where we have, we call them, pic cards, the people's ID cards so we know who's who before we let them in, one of those great big deals. So it's kind of a confined space.

And he just took me by surprise, and he swung the door open. He said, why is the door locked? And so I backed up to sit down, because I didn't want him to grab me, because he was coming – I thought he was going to try to hug me.

Well, as I sat down, he say down – got down and pushed my legs apart and stuck his head in my lap, started wiggling his head back and forth, and I was trying to get him off of me. And I was telling him, no, and you need to leave. And I was trying to – I had to stand up to get him off of me.

And when I stood up, I pushed him backwards, and he kind of backed up. And I think he – you know, I think he knew then I was scared of him, because he backed up. And then he – he was saying things, you know, do you want me to lick you now or lick you later, that kind of thing. And he said, you're not really on the phone with anyone, are you? And I said, yes, I'm on the phone with somebody. He said, I don't think you're on the phone with anybody.

So then he started with the are you left or right legged, that kind of thing, and I just kept telling him, you know, you have to leave. You have to leave. You need to go home. And eventually he left, and I shut and locked the door. And he came around to the front, and that's when he said, you know, I'm going to shave for this. And I said, for what? And he said, for when I'm licking

2

you, because I got to represent the brotherhood. And he left.

(Stanley Dep. at 47-50.) At Blair's urging, Plaintiff reported this incident to her supervisor, Richard Kielmar, who proceeded to report the incident to another supervisor, Jim Dixon, who in turn reported Plaintiff's allegations to the police chief and to the human resources department. Defendant initiated an investigation of the incident, during which it suspended Ragland's access to the plant. At the conclusion of the investigation, Defendant obtained Ragland's resignation.

In June 2007, Plaintiff filed a three-count complaint in the Court of Common Pleas in Pike County, Ohio in which she asserted claims for sexual harassment, retaliatory conduct, and negligent retention. (Doc. # 3.) Defendant subsequently removed the action to this Court. (Doc. # 2.) Defendant has filed a motion for summary judgment, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

At the outset, this Court notes that Plaintiff does not identify in her Complaint any federal claims for relief, but states only that she "is a woman and as such is a member of a group protected under Ohio Revised Code Chapter 4112 from discrimination on the basis of her sex." (Doc. # 3 ¶ 5.) Although the pleading thus presents state law claims for relief under Ohio Rev. Code §§ 4112.02 and 4112.99 for sex discrimination/hostile work environment[1] and retaliation, as well as the state law tort of negligent retention, this Court recognizes that it may rely on federal law as appropriate in addressing the various claims.[2]

Having established the analytic framework, the Court can now turn to the first claim that Plaintiff asserts. In order to demonstrate a *prima facie* case of § 4112 hostile work environment/sexual harassment, Plaintiff must prove that

---

[1] Discrimination based on sex can create a hostile or abusive work environment. *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999).

[2] As the parties recognize, federal law is relevant because Ohio courts utilize Title VII case law when construing Ohio's § 4112. *Lundy v. General Motors Corp.*, 101 F. App'x 68, 71 (6th Cir. 2004) (citing *Retterer v. Whirlpool Corp.,* 111 Ohio App. 3d 847, 677 N.E.2d 417, 424 (Ohio Ct. App. 1996)).

4

> (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) the harassment was committed by a supervisor or the employer, through its agents or supervisory personnel, who knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004). *See also Williams*, 187 F.3d at 560-61. Viewing all the evidence in a light most favorable to Plaintiffs, the Court concludes that no reasonable factfinder could find against Defendant on the hostile work environment claim.

To prove discrimination in the form of a hostile work environment, a plaintiff must show that

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment .... Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted). In light of this standard, Defendant correctly notes that Plaintiff's isolated incident of allegedly being sexually assaulted once does not rise to the level of objectively severe and pervasive harassment that affected the terms, conditions, or privileges of her employment.

Plaintiff attempts to salvage her hostile work environment claim by directing this Court to numerous pre-October 8, 2006 incidents of alleged harassment by Ragland involving other

5

employees.[3] These incidents, Plaintiff argues, present a severe and pervasive pattern of harassment that creates a hostile work environment under the rationale of *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008). In that case, the Sixth Circuit addressed the claims of four female co-workers who alleged that an employer's handling of serial harassment by a male co-worker presented a hostile work environment. The court of appeals concluded, as Plaintiff notes, that in assessing whether a hostile work environment existed, "the factfinder may consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Id.* at 336.

Defendants counters Plaintiff's reliance on *Hawkins* by noting that although that case indeed stands for the general proposition that harassment not directed at or observed by a particular plaintiff may nonetheless establish a hostile work environment surrounding that plaintiff, *Hawkins* does not eviscerate the overarching rule that a plaintiff cannot bootstrap a hostile work environment claim by relying on events of which she was unaware during the relevant time period. *See Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 262 (6th Cir. 2001) (explaining that the general rule that "episodes of harassment concerning other women are probative to plaintiff's experience in a hostile work environment, even if not directed at plaintiff herself"is qualified by the fact that "[o]f course, plaintiff must have been aware of these incidents during her employment, even if indirectly, for the accounts of others to be relevant"). Here, Plaintiff concedes in her deposition that she was not aware of the alleged

---

[3] The Court notes that Ragland allegedly engaged in improper behavior toward Plaintiff prior to October 8, 2006, but Plaintiff conceded in her deposition that she had never reported or mentioned these incidents to her supervisors or even co-workers. (Stanley Dep. at 45.)

hostile work environment before October 8, 2006. (Stanley Dep. at 93.) She testified that she learned of Ragland's conduct toward others from her mother and Rich Kielmar, other employees at the Portsmouth facility, only after the alleged assault by Ragland. (Stanley Dep. at 66-68, 72-73, 93-94.) This lack of pre-October 8, 2006 knowledge and Defendant's reaction to that day's incident are critical facts. The former means that Plaintiff has failed to establish the third prong of her prima facie case, while the latter presents a failure to establish the fourth prong.

The Sixth Circuit has explained that "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005). Accordingly, the only relevant inquiry here is whether Defendant's conduct, after having been put on notice of Ragland's October 8, 2006 actions toward Plaintiff, constituted appropriate remedial action. This is because, as the Sixth Circuit has stated in discussing hostile work environment claims, "when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id. See also Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003) ("If the harasser was merely the plaintiff's co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action.") (citing *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001); *Courtney v. Landair Transp., Inc.,* 227 F.3d 559, 564-65 (6th Cir. 2000)). Defendant's response to the October 8, 2006 incident was neither indifferent nor unreasonable: the company initiated an investigation into Ragland's actions, suspended Ragland,

and ultimately terminated Ragland's employment by apparently forcing his resignation. These remedial steps are sufficient to preclude Defendant's liability on the hostile work environment claim. *See Hawkins*, 517 F.3d at 344. Thus, the instant case echoes the relevant portion of *Hawkins*. The Sixth Circuit in fact *upheld* summary judgment against one of the four plaintiffs in *Hawkins* for failure to establish a *prima facie* case of a hostile work environment based on the fact that after learning of the harassment, that plaintiff's employer "promptly launched an investigation, suspended [the harasser], and then fired him." *Id.*, 517 F.3d at 344. The same reasoning proves dispositive here.

Because no reasonable factfinder could conclude that Plaintiff can establish the third and fourth prongs of a *prima facie* case, her first claim fails to survive summary judgment.

Defendants also seeks summary judgment on Plaintiff's claim for retaliation, which Plaintiff has presumably brought under Ohio Rev. Code §§ 4112.02 and 4112.99. To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that

> (1) she engaged in a protected activity; (2) the exercise of the protected right was known to defendant; (3) the defendant thereafter took adverse employment action against plaintiff or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal link existed between the protected activity and the adverse action.

*Mast*, 58 F. App'x at 122 (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). An employer thus violates the statutory scheme when it engages in an adverse employment action against a person who has complained of harassment or discrimination or who has taken part in an investigation into allegations of harassment or discrimination.

Defendant posits that it is entitled to summary judgment because it simply did not take

8

any adverse action against Plaintiff.  Plaintiff disagrees and directs this Court to one possible adverse action: that as a result of a post-October 2006 temporary change in her status from armed guard to unarmed guard, Plaintiff was ineligible for certain promotions.  To support this contention, Plaintiff references one page from the deposition testimony of Defendant's former Human Resources Director, Gary Hairston, which provides in relevant part:

> Q.  And were there promotions available to armed guards that were not available to unarmed guards?
> A.  Security did not have unarmed salaried police supervision jobs.  All salary – all police supervisors were expected to meet the arming requirement.  So if you were unarmed, then you obviously couldn't be promoted to one of those positions.

(Hairston Dep. at 60.)  Even drawing all reasonable inference from this testimony in Plaintiff's favor, this Court agrees with Defendant that Plaintiff has failed to present a retaliation claim that survives summary judgment.

The foregoing testimony does not indicate that any promotions were actually available during the period of Plaintiff's temporary disarming.  Nor does this testimony indicate that Plaintiff was qualified for the police supervisor jobs.  Rather, the referenced testimony simply reveals that as a general proposition, promotions were not available to unarmed guards.  This is an insufficient proposition to evade summary judgment because it does not indicate that an adverse action occurred.  To reach the conclusion that Plaintiff asks this Court to reach, the Court would have to do more than draw a reasonable inference in her favor; the Court would have to draw one or more inferences (qualifications, availability) to in effect assume facts not in evidence.  This the Court cannot and will not do.  Accordingly, because Plaintiff has failed to present any adverse action, Defendant is also entitled to summary judgment on Plaintiff's

retaliation claim.

This leave for discussion Plaintiff's claim of negligent retention. To establish a *prima facie* case of negligent retention, Plaintiff must demonstrate

> "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."

*Southerland v. Sycamore Community School Dist. Bd. of Educ.*, 125 F. App'x 14, 18 (6th Cir. 2004) (quoting *Evans v. Ohio State Univ.,* 112 Ohio App.3d 724, 739, 680 N.E.2d 161, 171 (Ohio Ct. App. 1996)). Additionally, the Sixth Circuit has explained that Ohio law provides that "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235, 1244 (1988). *See also Minnich v. Cooper Farms, Inc.*, 39 F. App'x 289, 296 (6th Cir. 2002) ("a plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer"). Thus, the court of appeals has explained, a plaintiff must allege and prove a tort against an employee as a prerequisite to a negligent retention or supervision claim against the employer. *See, e.g., Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 517 (6th Cir. 1999). *See also Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 745 (N.D. Ohio 2008) ("In [*Greenberg*], the Sixth Circuit interpreted the Ohio Supreme Court's decision in [*Strock*] to require that a plaintiff allege and prove that the employee is individually liable to the plaintiff for a tort.").

Defendant does not argue that it is entitled to summary judgment on the grounds that

Plaintiff cannot prove a prerequisite tort or wrongdoing by Ragland.  Rather, Defendant argues only that it is entitled to summary judgment because it cannot be regarded as negligent because it did not have actual or constructive knowledge of Ragland's asserted incompetence.  Plaintiff disagrees and argues that although a formal complaint of harassment was never filed until the incident involving Plaintiff, numerous supervisors knew of purported incidents evincing Ragland's alleged proclivity toward serial harassment.  Thus, Plaintiff concludes, "[b]y retaining Ragland even after gaining knowledge of his sexually harassing behavior, Defendant's negligence made it possible for Ragland to sexually harass [Plaintiff] and therefore, [*sic*] caused [her] injuries."  (Doc. # 37, at 15.)

There is a genuine issue of material fact over the extent of Defendant's actual or constructive knowledge regarding Ragland's asserted incompetence.  Defendant denies any actual or constructive knowledge of Ragland's alleged harassing tendencies, pointing to the fact that there had never been a formal complaint made against him until Plaintiff's report. But Plaintiff has produced evidence of constructive knowledge that, necessarily regarded by this Court as true, undercut Defendant's contention.

For example, Plaintiff has proffered the affidavit of Juanita "Rebecca" Schneider in which that former employee of Defendant states how Ragland chased her, picked her up, threw her over his shoulder, and proceeded to bite her on her posterior.  (Doc. # 37-5, Schneider Aff. ¶¶ 5.)  Schneider also states that Ragland also bit the posterior of another co-worker, Melissa Dunseith, and that both women were shocked and offended.  (*Id.*)  Dunseith purportedly reported the incident to supervisor Troy Strode, who verbally reprimanded Ragland (*Id.* ¶ 6) and who states in his own affidavit that he then reported the matter to his superior, Roger Robinson (Doc.

11

# 37-4, Strode Aff. ¶ 12). Schneider states in her affidavit that she did not pursue further reporting because Ragland had been reprimanded and that, even if he had not received a verbal reprimand, the culture of retaliation at Defendant's facility would have kept her from pursuing a complaint. (Doc. # 37-5, Schneider Aff. ¶¶ 6-7.) Finally, Schneider states that Ragland's propensities were well known to supervisors and were "just laughed off" as Ragland being Ragland. (*Id.* ¶ 10.) Such facts, if true, speak to Defendant's knowledge of Ragland's incompetence and suggest its negligent enabling of his purported subsequent harassment of Plaintiff. Accordingly, the Court cannot grant summary judgment in favor of Defendant on Plaintiff's claim of negligent retention.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment. (Doc. # 33.) The only claim remaining for trial is Plaintiff's claim of negligent retention.

**IT IS SO ORDERED**.

                                                /s/ Gregory L. Frost
                                           GREGORY L. FROST
                                           UNITED STATES DISTRICT JUDGE